**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

**v.**

**CYNTHIA BALLENGER, and**
**CHRISTOPHER PRICE,**

**Defendants.**

**Case No. 1:21-cr-00719 (JEB)**

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITY IN**
**SUPPORT OF MOTION TO SUPRESS DATA RECOVERED FROM**
**CERTAIN FACEBOOK ACCOUNTS AND DERIVATIVE EVIDENCE AND TO**
**PROVIDE ANY OTHER APPROPRIATE RELIEF**

Defendant Cynthia Ballenger (Cynthia Price) and Defendant Christopher Price, (together Defendants or the Prices) by and through undersigned counsel, provide this Memorandum of Points and Authority in Support ("Mem. in Supp.") of Defendants' Motion to Suppress Data Recovered from Certain Facebook Accounts and Derivative Evidence and To Provide Any Other Appropriate Relief. ("Motion to Suppress"), pursuant to the Rule. Pursuant to Fed. R. Crim. P. 12(b)(3), 12 (h) and 4(h).

## BACKGROUND

Special Agent Jeffrey Belcher attested to an application for a search warrant on November 7, 2022 for information stored at Facebook, Inc. The application is filed In the Matter of the Search of Information Associated with One Account Stored at Premises, Case No. 22-SC-2835. [See ECF1 Attachment in 22-SC-2835 and also

attached here as an exhibit to this memorandum].  The first 7 pages of Exhibit 1 to this Memorandum constitute the search warrant ("Search Warrant").  The next set of pages to Exhibit include the Affidavit in Support filed by Special Agent Belcher. ("Affidavit").  The Search Warrant is stated as pursuant to 18 U.S.C § 2703 for investigation of violation of 18 U.S.C. §§ 1752(a)(1) and (2) and §§ 5104(e)(2)(D) and (G).  The Search Warrant was made in the United States District Court for the District of Columbia in the for the purpose of the search and seizure of persons or property located Northern District of California.  Attachment B to the Search Warrant has a very broad list of information for Facebook, Inc. to provide under a section styled: "I. Information to be disclosed by Facebook, Inc. ("PROVIDER') to facilitate execution of the warrant." The Search Warrant then has a section styled "II. Information to be seized by the government." The provision generally has numerous lines that lead with the term "information" and then qualifies the term with respect to some alleged indicia of relevance to the charges against the Prices. The Search Warrant in Attachment B then has a section III called Government Procedures for Warrant Execution. The government procedure for warrant execution says:

> The United States Government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States.  Law enforcement personnel will then send any information from the PROVIDER

that does not fall within the scope of Section II and will not further review the information absent an order of the Court.  Separately, Special Agent Belcher provides the Affidavit for the Search Warrant.  The Affidavit states among other items that [t]his affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(a), §2703(b)(1)(A), and § 2703(c)(1)(A) to require Provider to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.

The Prices received a redacted copy of 4 pages of the Search Warrant that was provided to Facebook, Inc.  from the Facebook Legal Response Team but this misled the Prices and Counsel to believe those 4 pages were the entire Search Warrant in November 2022.  The Prices filed a Motion to Quash in   Case No. 22-MC-118(ZMF). (See also Motion for Leave to File). On February 9, 2023, Magistrate Judge Faruqui denied the motion stating that the Motion to Quash and become moot and that any Motion to Suppress should be filed with trial court.

## ARGUMENT

I.   **The Fourth Amendment Prohibition Against Unreasonable Searches, and Reasonable Expectation of Privacy for Private Messages, Requires A High Standards for A Search Warrant in the Instant Case**

The primary issue here concerns private conversations and attachments through the messenger service of Facebook. A great many Americans have experience with this service. It is a ubiquitous means of conducting private

communications with another private individual like texting or email.  This is the part of Facebook intended for private communication and not public posting. Such conversations involve the reasonable expectations of privacy of the Prices and friends and acquaintances of the Prices who are communicating on messenger have this reasonable expectation of privacy.  The First Amendment and Fourth Amendments protects speech, the right to receive information, and the right to associate with others to engage in speech without state monitoring or interference.

"[A] search of an individual's personal e-mail account would be just as intrusive as a wiretap on his home phone line; holding that the privacy interests in mail and email are identical." *U.S. v. Warshak*, 631 F.3d 266 (6th Cir. 2010); *see also United States v. Forrester*, 512 F.3d 500, 511 (9th Cir.2008)). "Over the last decade, email has become "so pervasive that some persons may consider it to be an essential means or necessary instrument for self-expression, even self-identification. It follows that email requires strong protection under the Fourth Amendment; otherwise, the Fourth Amendment would prove an ineffective guardian of private communication, an essential purpose it has long been recognized to serve." *Id*. at 266. The Prices reasonable expectation of privacy under the Fourth Amendment in these kinds of private communications and other data is clear. See *Riley v. California*, 134 S. Ct. 2473, 2493, 189 L. Ed. 2d 430 (2014) ("[T]he fact that a search in the pre-digital era could have turned up a photograph or two in a wallet does not justify a search of thousands of photos in a digital gallery."); see also *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

4

As the Supreme Court has repeatedly emphasized, individuals whose constitutional rights are implicated by a government request for private data held by a third party have standing to challenge the request in order to protect their constitutional rights before the disclosure of the requested information. See, e.g., *Gravel v. United States*, 408 U.S. 606, 608–09, 92 S. Ct. 2614, 33 L. Ed. 2d 583 (1972); *Pollard v. Roberts*, 283 F. Supp. 248, 258–59 (E.D. Ark. 1968) (three-judge court), aff'd per curium, 393 U.S. 14, 89 S. Ct. 47, 21 L. Ed. 2d 14 (1968); *Perlman v. United States*, 247 U.S. 7, 12–13, 38 S. Ct. 417, 62 L. Ed 950 (1918).

The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This particularity requirement prohibits general warrants that would allow the government to "rummage" through someone's personal effects. *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). The need for such particularity, and for stringent limitations on warrants, is "especially great" when the searches by their nature "involve[] an intrusion on privacy that is broad in scope." *Berger v. New York*, 388 U.S. 41, 56, 87 S. Ct. 1873, 18 L. Ed. 2d 1040 (1967) (imposing procedural limitations on wiretapping warrants).

The Fourth Amendment's particularity requirement is more demanding in the context of searches of electronic data, like the one here, which can sweep up large amounts of sensitive information. At its most elementary level, the First Amendment prohibits government from taking actions that burden speech except in extraordinary circumstances. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641–

42, 114 S. Ct. 2445, 129 L. Ed. 2d 497 (1994). More specifically, courts have recognized, including in the criminal context, that government demands for information concerning expressive activities implicate the First Amendment and therefore require greater protection. *See Branzburg v. Hays*, 408 U.S. 665, 680–81, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972) (explaining that "justifiable governmental goals may not be achieved by unduly broad means having an unnecessary impact on protected rights of speech, press, or association"). In addition, the Government must show that "the means of obtaining the information is not more drastic than necessary to forward the asserted governmental interest." *Bursey v. United States*, 466 F.2d 1059, 1083 (9th Cir. 1972).

Courts around the country have recognized that "the particularity requirement assumes even greater importance" in electronic searches because otherwise there is "a serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant." *United States v. Galpin*, 720 F.3d 436, 446–47 (2d Cir. 2013) (quoting *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010)). This is because "advances in technology and the centrality of [electronic devices] in the lives of average people have rendered [such devices] akin to . . . residence[s] in terms of the scope and quantity of private information [they] may contain." *Galpin*, 720 F.3d at 446. So too can the contents of electronic accounts like Facebook, which is at once a message board, an email service, a diary, a calendar, a photo book, a video archive, and much more.

There should be limited discretion as to contents under a warrant. "As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" *Stanford* v. *Texas*, 379 U.S. 476, 485 (1965) (quoting *Marron* v. *United States*, 275 U.S. 192, 196 (1927)). As stated in *Stanford*:

> As MR. JUSTICE DOUGLAS has put it, "The commands of our First Amendment (as well as the prohibitions of the Fourth and the Fifth) reflect the teachings of *Entick* v. *Carrington,* [Citation omitted]. These three amendments are indeed closely related, safeguarding not only privacy and protection against self-incrimination but `conscience and human dignity and freedom of expression as well.'" (citing *Frank* v. *Maryland*, 359 U.S. 360, 376 (dissenting opinion)).

> In short, what this history indispensably teaches is that the constitutional requirement that warrants must particularly describe the "things to be seized" is to be accorded the most scrupulous exactitude when the "things" are books, and the basis for their seizure is the ideas which they contain.

As stated by the Supreme Court:

> In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized. Similar dangers, of course, are present in executing a warrant for the "seizure" of telephone conversations. In both kinds of searches, responsible officials, including judicial officials, must take care to assure that they are conducted in a manner that minimizes

unwarranted intrusions upon privacy. *Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976).

## II.    The Facebook Search Warrant Does Not Meet Constitutional Requirements

### A.  The Application and Search Warrant Fails the Scope Requirements of the Stored Communications Act Which Is Relevant to Particularity and Reasonableness of the Search Under the Fourth Amendment

The Stored Communications Act, 18 U.S.C. § 2701-2712 ("SCA") sets forth a system of statutory privacy rights for customers and subscribers of computer network service providers.  18 U.S.C. § 2703 creates a code of criminal procedure that federal and state law enforcement officials must follow to compel disclosure of stored communications from network service providers. To protect the array of privacy interests, the SCA offers varying degrees of legal protection depending on the perceived importance of the privacy interest. The Prices are bringing the Motion to Suppress under the Fourth Amendment.  However, the application and Search Warrant both cite to 18 U.S.C. § 2703 as the source of authority for the Search Warrant. The question of whether a search is unreasonable certainly include whether the Search Warrant followed the express limitations of the authorizing statute. The application and Search Warrant show no effort at all to reflect the language or structure of 18 U.S.C. § 2703. Instead, both the application and the Search Warrant blur the separate provisions of 18 U.S.C. § 2703(a), (b)(1)(A), and (c)(1) into a data dump of "information."  Nowhere in any process are the important scope limitations of 18 U.S.C. § 2703(a), (b)(1)(A), and (c)(1)(A) applied.  This is not

a reasonable, credible, or legal application of the provisions of 18 U.S.C. § 2703 as a source of authority for the Search Warrant.

The limitations in 18 U.S.C. § 2703(a) come from the language "contents of a wire or electronic communication, that is in electronic storage in in an electronic communication system for one hundred and eighty days or less."

18 U.S.C. § 2703(a) has a time limit of 180-days back from the date of the warrant. So, even if other scope limitations did not apply, 18 U.S.C. § 2703(a) would cover a period something like May 7 to November 7, 2022. The search warrant fails to make this distinction.

"[E]lectronic storage" means either "temporary, intermediate storage . . . incidental to . . . electronic transmission," or "storage . . . for purposes of backup protection." *Id.* § 2510(17). The phrase 'for purposes of backup protection of such communication' in the statutory indicate that messages that are in post-transmission storage, after transmission is complete, are not covered by part (B) of the definition of 'electronic storage.'" *Fraser v. Nationwide Mut. Ins. Co.*, 135 F. Supp. 2d 623, 636 (E.D. Pa. 2001), af'd in part on other grounds 352 F.3d 107, 114 (3d Cir. 2004) (affirming the SCA portion of the district court's ruling on other grounds); see also *U.S. v. Weaver*, 636 F. Supp. 2d 769 (C.D. Ill. 2009); (interpreting "electronic storage" to exclude previously sent email stored by web-based email service provider); *Jennings v. Jennings*, 401 S.C. 1, 736 S.E.2d 242 (S.C. 2012)(Where the email user "left the single copies of his e-mails on the Yahoo!

Server retaining an opened email did not constitute "storing it for backup protection under the Act." *But see Theofel v. Farey-Jones* 359 F.3d 1066, 1075 (9ᵗʰ Cir. 2004).

The government cannot and did not meet the requirements in 18 U.S.C § 2703(b)(1) on November 7, 2022. 18 U.S.C. § 2703(b)(1) only apples to any wire or electronic communication made applicable by paragraph (2) of the subsection. The 18 U.S.C 2703(b)(2) language is very specific:

> Paragraph (1) is applicable with respect to any wire or electronic communication that is held or maintained on that service---(A) on behalf of….a subscriber or customer of such remote computing service.

To the Prices understanding, Facebook removed access to these accounts for the Prices sometime in August or, possibly, early September 2021. The United States should have determined status with Facebook of the Prices as subscribers or customers before the sweeping search. The Prices have not been subscribers or customers of Facebook at all in the sense that they have never paid any fees. The Prices have not been subscribers or customers of Facebook for these accounts in the sense that Facebook removed access in August or early September 2021. 18 U.S.C § 2703(b)(2) uses language in the present tense for applicability. On November 7, 2022, while Facebook may have held certain wires or electronic communications from the former messenger account, Facebook was not holding them for the Prices as subscribers or customers and had long before denied the Prices access.  This is not to say the Prices do not have a strong privacy interest in the materials.  If the

Prices had been afforded a transition and explanation, the Prices may have protected that privacy interest further.  However, that is not the case here.

The Search Warrant must also meet the requirements of 18 U.S.C § 2703(b)(2)(B).  That requirement must show that holding anything on the messenger service was for the purpose of providing long term storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any service other than storage or computing process. Again, this is not a requirement met in the instant case.

18 U.S.C § 2703(c)(1)(A) is also limited to information pertaining to a subscriber or customer of such service.  Further, 18 U.S.C § 2703(c)(1)(A) cannot address "contents of communication." Under 18 U.S.C § 2510(8) "contents," when used with respect to any wire, oral, or electronic communication includes any information concerning the substance, purport, or meaning of that communication. According to the legislative history of the 1994 amendments to 18 U.S.C § 2703(c), the purpose of separating the basic subscriber and session information from other non-content records was to distinguish basic subscriber and session information from more revealing transactional information that could contain a "person's entire on-line profile." H.R. Rep. No. 103-827, at 17, 31-32 (1994), reprinted in 1994 U.S.C.C.A.N. 3489, 3497, 3511-12.

The Search Warrant does not meet the separate and distinct limitations of these provisions. To the extent the Search Warrant references the issue, the application inappropriately bundles them under the term "information" as opposed to separate terms regarding any wire or electronic communication.  The Search Warrant is invalid with respect to the authorizing language and limitations.

**B.  The Facebook Search Warrant Is Overbroad and Fails Particularity**

The Search Warrant relies on the fiction that the government is not "seizing" the material requested from Facebook.  Unquestionably, the Search Warrant with respect to what Facebook is required to produce for the government to review and filter would be a general warrant, unless one considers the subsequent government filtering process. There are Fourth and First Amendment concerns with respect to this structure. The structure means both Fourth and First Amendment protections are determined by the government through the government. The structure is antithetical to the holdings in *Stanford* among other cases.

There is a First Amendment chilling effect when conversations are sent to and monitored by the government regardless of a filtering process. When parties become aware that the government can demand this information and more from all social media, the ability to speak freely declines.  In this case, the government has put such conversations into the column of potential evidence relevant crime for vague reasons, with no particularity, and no materiality.  The damage is not just to the Prices but also to friends of the Prices who are listed and were communicating with the Prices.

A review of the criteria in the warrant shows the overbreadth, danger and lack of particularity. First, as discussed above, none of the filtering criteria refer to the scope limitations under Search Warrant Attachment B, II (c) refers to information that constitutes evidence indicating the Account user's state of mind, e.g. intent, absence of mistake, or evidence indicating preparation or planning related to the criminal activity under investigation.  The latter part of the sentence seems reasonable.  But the first part is very loose and unbounded.  Everyone has opinions on the events of January 6, 2021.  The Prices have the right to talk to their friends and acquaintances without fear of government monitoring.  Moreover, conversations about January 6, 2021 would be influenced, over time, by information not available to the Prices early on January 6, 2021.  The Prices must be able to comment on these issues. The government seeks to seize thoughts in conversations over a wide stretch of time. Other criteria are not about the potential criminal activity of the Prices at all. For example, Search Warrant Attachment B, II (g) refers to "Any riot and/or civil disorder at the United States Capitol on January 6, 2021."  The Prices opinions or observations about such events or their friend and acquaintance opinions are not legitimate subjects for the government monitoring Consider Search Warrant Attachment B, II (b)(ii) which is information that constitutes concerning persons who…(ii) communicated with the Account about matters relating to criminal activity under investigation, including records that help reveal their whereabouts.  "Communicated with the account" is broad. "Matters related to" is broad.  Which persons "whereabouts" are at issue and why?

13

As the Prices have complained, the government will not actually explain the criminal matter under investigation in key aspects.  For example, the government has not told defendants what actions constitutes disorderly or disruptive conduct. Search Warrant Attachment B, II (a) is not even restricted to the times of January 6, 2021 and looks for "information that constitutes evidence of the identification or location of the user(s) of the account. Read strictly, the government is asking for evidence of the location of the Prices from November 2020 to November 2022.

The criteria go beyond the matters under investigation. For example, Search Warrant Attachment B, II (b)(2)(i) looks for collaboration and conspiracy.

Again, consider the further formulation in the Search Warrant Attachment B, II (i) which is:

Evidence concerning the identity of persons who…(ii) communicated with the unlawful actors about matters relating to the matters to the criminal activity under investigation, including records that help their whereabouts.

The Prices are not unlawful actors.  "Relating to" is broad. Again, why do "whereabouts" matter.  The Prices are innocent and there is no reason to believe anyone else on the conversation has anything to offer.

There may be relevant information the government is attempting to glean but ambiguous criteria set out by government with no adversarial input, incredibly and ambiguous sweeping criteria, and discretion by the government team to implement the criteria offers no credible First and Fourth Amendment Protections. The Prices could imagine appropriates procedural protections, criteria, and

oversight.  The search warrant offers nothing credible and seeks to seize private

conversations that involve what has become political subject matter.

### C.  The Search Warrant Process, Combined with the Criteria, Leaves Too Much Discretion in the Hands of Various Government Employees

The Search Warrant has the government administer these ambiguous filters

through government employees who are likely simply on the prosecution team.  The

Search Warrant in Attachment B page 4 says:

> This warrant authorizes a review of electronically stored information,
>
> communications, other records and information disclosed pursuant to this
>
> warrant….The  review of this electronic data may be conducted by any
>
> government personnel assisting in the investigation, who may include, in
>
> addition to law enforcement officers and agents, attorneys for the
>
> government, attorney support staff and technical experts.

This leaves broad discretion both respecting as to who administers the

various filtering criteria above AND interpretations of those filters, and

interpretations of the statutory elements. The search itself is not about tangible

things but rather about ideas conveyed in messages and conversation between

private parties. The parties have their own context and vocabulary.  Many of the

discussions occur after the particular conduct in question in the charges.  These

parties gained knowledge and perspective after the particular event.  There should

be limited discretion as to contents under a warrant. "As to what is to be taken,

nothing is left to the discretion of the officer executing the warrant.'" *Stanford* at

485 [Citation Omitted]. The concern in *Stanford* seizure for the "ideas which they contain."

### D.  The Prices Did Not Have Credible Opportunity to Provide A Motion to Quash

There does not appear to be a statutory requirement to provide notice and a credible opportunity to quash related to 18 U.S.C. § 2703(a), §2703(b)(1)(A), and § 2703(c)(1)(A).  However, the Prices believe this lack of notice and protection is relevant to a Fourth Amendment analysis.  The Fourth Amendment may demand more.  The Prices observe there are notice mechanisms in18 U.S.C. § 2703 and notice and opportunities for challenge under 18 U.S.C. § 2704(a)(2) and (b).  There are delayed notification criteria in U.S.C. § 2705 (a).  There are also requirements for specific and articulable facts relating to the contents of "…a wire or electronic communication…" in 18 U.S.C. 2703.  Reasonable requirements could be constructed by a Court if where necessary to protect Fourth Amendment rights.

### E.  There Is No Predicate Disorderly or Disruptive or Demonstrative Conduct  During The Prices' Time in the Foyer of the Senate Wing Door And, Thus, No Probable Cause Under 40 USC §§ 5104(e)(2)(D) or (e)(2)(G) and Also No Probable Cause Under 1752(a)(2) To The Extent Dependent On Conduct In the Capitol Building

The statement of probable cause in the Affidavit is defective in several ways. First, a substantial amount of the statement alleges the actions of others who were at the Capitol when the Prices were not and who the Prices never saw.  ¶¶16, 18, 21, 22, 25 and 36, including many pictures there in are particularly egregious for the alleged conduct and pictures of others at times and locations not near the

16

Prices.  These provisions of the Affidavit do not provide probable cause related to the Prices. If anything, these points show other people were "in fact" the cause of the suspension which occurred before the Prices arrived.

By contrast the pictures of the Prices in ¶¶ 46 -48 in the Affidavit show the Prices in calm scenes walking or standing. The *mens rea* requirements cannot expand what a crime is.  For a crime under 40 USC §§ 5104(e)(2)(D) or (e)(2)(G) and the government lacks probable cause regarding the predicate conduct because the government has evidence the Prices are peacefully walking during their short time in part of the foyer inside the Senate Wing Door. No statement or thought from a Facebook conversation can change what one sees in terms of conduct in the Capitol.

Special Agent Belcher also omits critical facts in ¶ 48 when he states the Prices are still inside the restricted grounds when standing peacefully outside on the Upper Terrace Northeast.  Special Agent Belcher can only mean the ghost of a restricted perimeter or the ghost of a restricted area. Perhaps, meaning the alignment of signs, bike racks and/or fencing that may have at one-time existed had long before ceased to exit.  The magistrate judge was not made aware of this important clarifying point.

**F.  The FBI Lacks Jurisdiction to Investigate Violations of 18 U.S.C. § 1752, Based on the Current Allocation of Responsibilities Between the FBI and the United States Secret Service and Special Agent Belcher Failed to Establish Authorization to Investigate Any of the Charges**

Special Agent Belcher chose an avenue under 18 U.S.C § 2703 to pursue a warrant.  There are other avenues in 18 U.S.C § 2703 and different rules would apply. Here, the warrant avenue requires the process associated under Fed. Rule

Cr. P. Rule 41.  Fed. Rule Cr. P. 41(a)(2)(C) states that a Federal law enforcement officer means a government agent (other than an attorney for the government) who is engaged in enforcing the criminal laws and is within any category of officers <u>authorized by the Attorney General to request a search warrant</u>.  (emphasis added). Categories here must be read to mean as specified by the Attorney General for given criminal statutes. The FBI must have authority to seek the search warrant.

Also, 28 CFR 0.85 (a) says the Director of the FBI shall**:**

Investigate violations of the laws, including the criminal drug laws, of the United States and collect evidence in cases in which the United States is or may be a party in interest, except in cases in which such responsibility is by statute or otherwise exclusively assigned to another investigative agency.

The Department of Justice Manual § 9-65.100 states, in part:

….Investigative jurisdiction for violations of 18 U.S.C. §§ 871, 879, and 1752 rests with the Secret Service while the Federal Bureau of Investigation (FBI) has jurisdiction over 18 U.S.C. § 1751 (See https://www.justice.gov/jm/jm-9-65000-protection-government-officials#9-65.100)

Section § 9-65.400 of the DOJ manual states, in relevant part, that:

The Secret Service will conduct investigations of alleged violations of Title 18 U.S.C. § 1752 and forward copies of all investigative reports to the United States Attorney…..

Special Agent Belcher cited to 18 U.S.C. § 1752 in the application and 18 U.S.C. § 1752 is cited in the search warrant.  The FBI was without authority to seek this warrant, at least with respect to 18 U.S.C 1752. The lack of authority to investigate also has broader implications in the instant case.

18 U.S.C. § 2516 is not itself a limitation on FBI authority but Special Agent Belcher did cite to 18 U.S.C. § 2516 in ¶ 2 of the Affidavit. Specifically, Special Agent Belcher claimed authority to conduct investigations for offenses enumerated under 18 U.S.C § 2516. Again, it is important to note that neither 18 U.S.C. §1752 nor 40 U.S.C. § 5104 is listed in 18 U.S.C § 2516.   18 USC §1751, on the other hand, is listed under 18 U.S.C § 2516.

**III.    The Court Must Help Protect the Fourth Amendment from The Search Warrant in The Instant Case and Search Warrants Similar to the Instant Case Going Forward, Including by Granting the Motion to Suppress**

The First, and important step the Court must do here is analyze and rule and the arguments the Prices have made through an opinion.  If the court fails to provide such analysis, then further and continued harm will occur that erodes or overrides Fourth and First Amendment protections for the Prices and others.  The motion to suppress should apply for all the reasons stated above and the Court should consider any other remedy at the Court's disposal.  Such a remedy could include declaratory judgment or injunctive action, as an example.

The Courts have an obligation to protect against unreasonable searches under the Fourth and help protect the First Amendment.  The exclusionary rule is

one valid tool that can apply and the motion to suppress should be granted. The exclusionary rule is "a judicially created means of effectuating the rights secured by the Fourth Amendment." *Stone v. Powell,* 428 U.S. 465, 482 (1976).

The government will argue that even if the search violated the Fourth Amendment, application of the exclusionary rule because the law enforcement agents, or the government, implementing the search were relying on good faith on the Search Warrant. See *United States v. Leon*, 468 U.S. 897 (1984). Leon does not apply. The question here is not a matter of the police officer on the street retrieving clear physical evidence.

*Leon* considers the "costs and benefits of suppressing reliable physical evidence seized by officers…" *Id* at 913. Here the issue involves a wide range of private conversations that are not the crime, not physical evidence, and not likely reliable or trustworthy. These are conversations after the events where parties discuss a variety of information and perceptions formed later than the events. None of these discussions change the underlying predicate conduct in the instant case.

*Leon* further considers "officers relying on a warrant issued by a detached and neutral magistrate." Id. Here the issue is not about the neutrality of the magistrate. The issue is that the magistrate effectively gives away any role in the subsequent review process of ambiguous and complex terms. The complex criteria of the Search Warrant are determined by the government, reviewed by the government, and implemented by the government.

The Leon good-faith exception was not intended to apply to those situations where the government, as applicant, created all the issues.  The Search Warrant is invalid and there should be remedies that protect the Prices, prevent use of illegally obtained information, protect First Amendment activities, and seek to ensure proper compliance in the future.  The relevant Fourth Amendment point here is the government will modify its approach, in part, based on the application of the exclusionary rule, and the downsides related to exclusion in the instant case are limited.

The SCA does not itself provide a suppression remedy. *See* 18 U.S.C. § 2708 ("The [damages] remedies and sanctions described in this chapter are the only judicial remedies and sanctions for non-constitutional violations of this chapter."). However, in the instant case, the Prices have shown the Search Warrant and search is unreasonable under the Fourth Amendment and threatens activities protected under the First Amendment. These are Constitutional violations. Moreover, the failure to follow the scope limitations in the authorizing statute makes the Search Warrant invalid in general and part of the unreasonableness analysis of the Fourth Amendment.

Additionally, any evidence and information derived from exploitation of that data must also be suppressed. Taylor v. Alabama, 457 U.S. 687, (1982); United States v. Crews, 445 U.S. 463, 471(1980); Dunaway v. New York, 442 U.S. 590 (1975); Brown v. Illinois, 422 U.S. 590 (1975); Wong Sun v. United States, 371 U.S. 471 (1973).

## <u>Conclusion</u>

For the reasons set forth above, and for such other reasons as this Court may determine, the Prices respectfully requests that this Motion to Suppress be granted and the court consider any other appropriate relief to be granted.

Dated: February 13, 2023                          Respectfully submitted,


                                                  /s/ Nandan Kenkeremath
                                                  Nandan Kenkeremath
                                                  DC Bar 384732
                                                  USDC DC 384732
                                                  2707 Fairview Court
                                                  Alexandria, Virginia 22311
                                                  703-407-9407

                                                  *Counsel for Defendants*