UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CYNTHIA BALLENGER, and**<br>**CHRISTOPHER PRICE,**<br><br>   Defendants. | **Case No. 21-CR-719 (JEB)** |

### GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION
### FOR SENTENCING ADJUSTMENT

The United States, by and through its attorney, the United States Attorney for the District of Colombia, respectfully submits this response to the defendant's motion for sentencing adjustment based on the newly enacted U.S.S.G. § 4C1.1. ECF No. 165. For the following reasons, defendants' sentences should not be modified.

**I.     RETROACTIVE APPLICATION OF U.S.S.G. § 4C1.1**

U.S.S.G. § 4C1.1 provides for a two-level reduction for offenders with no criminal history points who are not subject to any of ten exclusionary criteria, including:

- § 4C1.1(2): the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
- § 4C1.1(3): the defendant did not use violence or credible threats of violence in connection with the offense;
- § 4C1.1(4): the offense did not result in death or serious bodily injury;
- § 4C1.1(7): the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense.

Section 4C1.1 may be applied retroactively to previously sentenced inmates, pursuant to U.S.S.G. § 1B1.10. Such a reduction may occur as provided in 18 U.S.C. § 3582(c)(2), which provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, a reduction pursuant to U.S.S.G. § 1B1.10 is not mandatory. Instead, a "court *may* reduce the term of imprisonment, after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(2) (emphasis added). Additionally, any proceeding under Section 3582(c)(2) is not a full resentencing, so a court is not permitted to reconsider other sentencing determinations left unaltered by the Section 4C1.1 amendment. *Dillon v. United States*, 560 U.S. 817, 825-826 (2010); U.S.S.G. § 1B1.10(a)(3).

A court considering a motion for a sentence reduction due to § 4C1.1 must follow a two-step process. *Id.* at 826. First, the court must determine whether the defendant is eligible for a sentence reduction. A defendant is only eligible under § 4C1.1 reduction if: (1) the defendant has no criminal history points; (2) the defendant is not subject to any of the exclusionary criteria; (3) the amended guidelines range is lower than the range applied at the original sentencing hearing; and (4) the defendant did not previously receive a sentence at or below the bottom of the now-amended range other than for providing substantial assistance. *See* U.S.S.G. §§ 1B1.10, 4C1.1; *Dillon v. United States*, 560 U.S. at 827.

Even if step 1 is satisfied, a sentencing reduction is not required. Instead, § 1B1.10 directs that before reducing a defendant's sentence, the court must "consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted" as well as "the extent of such a reduction." U.S.S.G. § 1B1.10 app. note 1(B)(i), (ii);

*see also id.* Background ("The authorization of such a discretionary reduction . . . does not entitle a defendant to a reduced term of imprisonment as a matter of right.").

In particular, the court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. *See*, *e.g.*, *United States v. Darden*, 910 F.3d 1064, 1068 (8th Cir. 2018). Section 1B1.10 application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." That means the court may, but is not required, to consider the defendant's post-sentencing rehabilitation, if any. *See United States v. Rodriguez-Rosado*, 909 F.3d 472, 481 (1st Cir. 2018); *United States v. Banderas*, 858 F.3d 1147, 1150 (8th Cir. 2017). Such conduct would include social media posts and other statements relating to the Capitol riot on January 6, 2021.

If the court decides in its discretion to grant a reduction in sentence, it generally may not reduce the term of imprisonment to a term that is less than the minimum of the new guideline range. U.S.S.G. § 1B1.10(b)(2)(A). Thus, the court may not reduce the sentence below the range provided by the amended guideline, and "in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(C).

## II. NO SENTENCING REDUCTION IS WARRANTED

### A. The Court already ruled that the defendants' sentences account for the Section 4C1.1 reduction.

Here, no sentencing reduction is warranted because the Court already explicitly considered and functionally applied a reduction under that Guideline at sentencing. Specifically, the Court "assumed" that the defendants would qualify for a reduction under § 4C1.1, concluding that,

"[T]he sentence I am going to impose is the same sentence that I would have imposed . . . if 4C1.1 does become law[.]" Sent. Tr., Sept. 29, 2023, 55:10-17.[1] Thus, there is no newly enacted Guideline that would lower the defendants' Guideline range, because the Court already factored in § 4C1.1 when it sentenced the defendants. *See* 18 U.S.C. § 3582(c)(2) (permitting the reduction of a sentence where "a defendant . . . has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . .").

    **B. Even if the Court determines that § 4C1.1 applies and the defendants' sentences do not account for the new Guideline, it should not reduce the defendants' sentences.**

"The grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998). A district court has "substantial discretion" in deciding whether to reduce a sentence. *United States v. Young*, 555 F.3d 611, 614 (7th Cir. 2009). Accordingly, many courts have denied sentence reductions even in situations where guideline

---

[1] Insofar as the Court has not explicitly ruled whether the defendants qualify for a sentencing reduction under Section 4C1.1, the government argues that they do not qualify. To receive the reduction, the defendants must satisfy a list of criteria about the facts of their case. U.S.S.G. § 4C1.1(a)(1)-(10). Among other things, the list requires that the defendants "did not possess . . . a firearm or other dangerous weapon (or induce another participate to do so) in connection with the offense." U.S.S.G. § 4C1.1(a)(7). Prior to the riot, Defendant Ballenger communicated with a friend via Facebook about her plans for January 6. Gov't. Tr. Ex. 307 at 10. In that conversation, Defendant Ballenger said that she was going to bring pepper spray and a pocketknife with her to Washington, D.C. *Id.* She also indicated that Defendant Price tried to convince her to bring bear spray instead of the pepper spray. *Id.* While testifying, Defendant Ballenger confirmed that she did in fact have pepper spray and the pocketknife with her while she was inside the Capitol. Trial Tr., Mar. 21, 2023, 73:14-74:17. Thus, Defendant Ballenger is not eligible for the sentencing reduction under the Section 4C1.1 amendment, because she admitted to possessing dangerous weapons during the commission of her crimes. U.S.S.G. § 4C1.1(a)(7). Similarly, Defendant Price is not eligible because he induced Defendant Ballenger to carry a dangerous weapon, namely bear spray, during the riot on January 6. *Id.*

amendments lowered the sentencing ranges. *See, e.g.*, *United States v. Strand*, 21-cr-085 (CRC), ECF No. 150 at 7-8; *United States v. Wilson*, 716 F.3d 50, 53 (2d Cir. 2013).

Here, the Section 3553(a) factors counsel against granting a sentence reduction. The defendants participated in a violent riot that captured the U.S. Capitol and ended the American tradition of peaceful transfers of power from one presidency to the next. Their participation took place despite numerous signs that they clearly had no right to be on Capitol grounds on January 6, including Area Closed signs, audible explosions, tear gas, calls for violence by rioters, attempts to destroy property, broken windows and doors, piercing alarms, and a large police presence. Nonetheless, the defendants decided to enter the Capitol Building, adding to the overwhelming number of rioters that law enforcement simply could not contain.

At trial, Defendant Ballenger took the stand in her defense, providing the Court with testimony that it found "largely incredible." Trial Tr., Mar. 21, 2023, 170:2. At sentencing, while the Court credited the defendants for not acting violently and described the defendants' conduct as "on the lower end" on the spectrum, Sent. Tr., Sept. 29, 2023, 23:4-6, the Court determined that the defendants' participation in the mob warranted a sanction of incarceration. These factors remain true today and counsel against reducing the defendants' sentences.

In addition, the Court already reduced the defendants' Guideline range by assuming the lowest possible Guideline range for their conduct. At sentencing, the Court found that the presentence report correctly calculated Defendant Price's offense level at 10 for a Guideline range of 6 to 12 months, and Defendant Ballenger's offense level at 12 for a Guideline range of 10 to 16 months. Sent. Tr., Sept. 29, 2023, 55:5-7. Nonetheless, the Court assumed that the obstruction of justice Guideline did not apply to Defendant Ballenger, reducing her offense level to 10 as well. *Id.* at 55:7-10. The Court then took the further step of assuming that the two-level reduction under

Section 4C1.1 applied to both defendants, reducing their offense levels again to 8 for a Guideline range of 0-6 months. *Id.* at 55:10-13. The Court sentenced Defendant Price to 45 days' incarceration and Defendant Ballenger to 4 months' incarceration. These sentences represent a 75% and 60% decrease respectively from the lowest end of the recommended sentenced ranges adopted by the Court. Any further reduction would create sentences less than sufficient to comply with the purposes of sentencing under § 3553.

While the government is sympathetic to Defendant Price's cancer diagnosis and the impact that the disease has had on the defendants' lives, the Court fully considered Defendant Price's health at sentencing. Sent. Tr., Sept. 29, 2023, 56:9-10 ("[Y]our health is a very serious issue that I take into consideration."). In doing so, the Court not only crafted a sentence that accounted for the diagnosis, but also continued the defendants' surrender date by over five months after sentencing to ensure that Defendant Price had adequate time to receive necessary medical treatment. Further, while the medical records provided by the defendants indicate that the cancer is terminal, Dr. Gregory Gagnon is hopeful that Defendant Price's life expectancy is measured in years. ECF No. 163-1 at 1. Thus, based on the information before the Court, Defendant Price's health is not a sufficient basis for a further reduction in his sentence.[2]

In addition, the 3553(a) factors counsel against a sentence reduction for the additional reason that the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses,

---

[2] Indeed, even if the Court decided to resentence the defendants due to enactment of U.S.S.G. § 4C1.1, resentencing under § 3582(c)(2) is limited only to the changed guideline range and does not permit a full resentencing. *Dillion*, 560 U.S. at 826 ("Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding.").

and injured more than one hundred police officers, causing serious bodily injury in many cases. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions").

Finally, the government notes that the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack. *See, e.g.*, *United States v. Little*, No. 21-cr-315 (RCL), ECF No. 73 at 4 ("The Court is accustomed to defendants who refuse to accept that they did anything wrong. But in my thirty-seven years on the bench, I cannot recall a time when such meritless justifications criminal activity have gone mainstream.").

Thus, due to the unique nature of the January 6 riot, the harms caused by the January 6 riot, and the significant need to deter future mob violence, the government submits that even if the Court finds that § 4C1.1 applies, the Court should nevertheless deny a sentence reduction. Such treatment would recognize the unique nature of the criminal events of January 6, 2021, coupled with the overwhelming need to ensure future deterrence, despite a person's limited criminal history.

### III. CONCLUSION

For the above-stated reasons, the government respectfully requests that the Court deny the defendants' motion for modification of their sentences and order the defendants to report to the Bureau of Prisons as scheduled on March 5, 2024.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  /s/ Andrew Haag
ANDREW S. HAAG
Assistant United States Attorney
MA Bar No. 705425
601 D Street, N.W.
Washington, DC 20530
(202) 252-7755
Andrew.Haag@usdoj.gov

/s/ Ashley Akers
ASHLEY AKERS
Trial Attorney
MO Bar No. 69601
Detailed to the U.S. Attorney's Office
601 D Street NW
Washington, DC 20530
(202) 353-0521
Ashley.Akers@usdoj.gov